UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAKUR MUHAMMAD,

        Plaintiff,

                              Case Number 98-10153
v.                                Honorable David M. Lawson

MARK CLOSE,

        Defendant.
_____ /

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SETTING SCHEDULING CONFERENCE

This prisoner civil rights case has had a long and contorted procedural history. Originally filed on June 2, 1998, it has traveled to the Supreme Court, *Muhammad v. Close*, 540 U.S. 749 (2004), via stops in the Sixth Circuit, and is now back before this Court for the third time. In his complaint, the plaintiff alleges that defendant Mark Close, a corrections officer employed by the Michigan Department of Corrections, retaliated against him for filing earlier lawsuits against Close; the complaint seeks damages under 42 U.S.C. § 1983. On December 17, 2001, this Court granted the defendant's motion for summary judgment, finding that the plaintiff had not presented evidence creating a triable fact issue on whether his protected conduct was a cause of the adverse action. After several trips to the Sixth Circuit and one to the Supreme Court, the case was remanded to this Court to consider the summary judgment motion for the third time. After assigning *pro bono* counsel, the Court requested supplemental briefs and heard oral argument. The Court now finds that the record contains sufficient evidence of causation. The Court also rejects the defendant's belated

claim of qualified immunity. Therefore, the Court will deny the defendant's motion for summary judgment and schedule the matter for trial.

## I. Facts and Proceedings

The essence of the case is this: the plaintiff alleges that in 1997, while he was a prisoner at the Standish Correctional Facility, Close wrongfully accused him of "Threatening Behavior," the plaintiff was found guilty of "Insolence," and he was sent to administrative segregation as retaliation for filing two lawsuits against Close. The Court previously summarized the facts in greater detail in its first order adopting the magistrate judge's report and recommendation and granting summary judgment, and they are set forth here for convenience:

> This case arose from an incident on May 21, 1997 while the plaintiff was incarcerated at the Standish Maximum Correctional Facility (SMF). The plaintiff alleges that the defendant, a corrections officer at SMF, intentionally provoked the plaintiff and wrote a violation accusing the plaintiff of Threatening Behavior, a serious offense. Specifically, the plaintiff claims that he noticed the defendant staring at him through a dining room window, and that the plaintiff stared back. In response, the defendant allegedly stormed into the dining room, and the plaintiff then rose from his seat and approached the defendant. The plaintiff was then handcuffed and led away to a detention cell.
>
> The defendant subsequently initiated disciplinary proceedings against the plaintiff, charging him with Threatening Behavior, defined as threatening words or behavior expressing an intent to injure another. *See* Def.'s Mot. Summ. J., Ex. 2, MDOC P.D. 03.03 .105 at 2. Six days after the incident, a disciplinary hearing was held and the plaintiff was found not guilty of Threatening Behavior, but found guilty of the lesser charge of Insolence, defined as words, actions or other behavior intended to harass or cause alarm to an employee. *See id.* at 3. The plaintiff was punished with seven days of detention and thirty days of lost privileges.
>
> The plaintiff alleges that the provocation and write-up was in retaliation for two prior lawsuits filed by the plaintiff against the defendant. The plaintiff first filed suit against defendant Close in 1994; Close was granted summary judgment in 1995. The second suit was filed in February 1996 and dismissed in December 1996.

Order Granting Mot. Summ. J., Dec. 17, 2001.

In that 2001 order, the Court set forth the applicable law, which the parties do not contest. A prisoner alleging retaliation for engaging in protected activity must show that (1) he engaged in protected activity; (2) an adverse action was taken against him that would defer a person of ordinary firmness from engaging in such activity; and (3) the adverse action was at least partly motivated by the protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-87 (6th Cir.1999) (en banc). Throughout the case, the parties mostly have agreed that the plaintiff engaged in protected activity when he filed his lawsuits, and the charge and prosecution for prison misconduct (threatening behavior) satisfied the adverse action element. On the causation element, however, the plaintiff had presented to the magistrate judge to whom the summary judgment motion was referred only evidence of temporal proximity between the lawsuit filings and Close's write-up. The incident occurred about fifteen months after the plaintiff filed his second suit against Close and while the plaintiff still was involved in appeals on those suits. The Court held that the evidence was insufficient to create a triable fact on the element of causation. Order Granting Mot. Summ. J., Dec. 17, 2001.

The plaintiff appealed that decision to the Sixth Circuit, which affirmed on different grounds and found that the plaintiff's challenge to the prison disciplinary finding was barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994), because the prison disciplinary proceeding had not terminated in the plaintiff's favor. *Muhammad v. Close*, 47 F. App'x 738 (6th Cir. Sept. 23, 2002). The Supreme Court reversed the Sixth Circuit's misapplication of *Heck v. Humphrey* and remanded the case to that court "for consideration of the motion for summary judgment on the ground adopted by the District Court." *Muhammad v. Close*, 540 U.S. at 755.

On remand, the Sixth Circuit addressed the sufficiency of evidence of causation and held that this Court should have addressed whether a late-filed affidavit from inmate Bruce Coxton — submitted with the plaintiff's objections to the magistrate judge's report and recommendation — should have been taken into account. The court of appeals held that "the Coxton affidavit appears to be precisely the type of evidence of causation that the district court thought was lacking." *Muhammad v. Close*, 379 F.3d 413, 417 (6th Cir. 2004). The court of appeals declined to consider the defendant's arguments that the affidavit was not notarized and not presented to the magistrate judge, stating that these arguments could be presented to the district court on remand. On the causation issue, the court of appeals noted that "temporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 417-18 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). The court remanded with instructions to "determine whether the Coxton affidavit alone, Muhammad's proof of temporal proximity alone, or both pieces of evidence together are sufficient to defeat Close's motion for summary judgment." *Id.* at 418.

In an opinion and order dated June 27, 2008, this Court addressed those issues and again granted the defendant's motion for summary judgment. The Court first found that "the fact that the affidavit of Mr. Coxton is not notarized does not preclude its consideration" because it "states that its contents were made 'under penalty of perjury,' and thus compl[ies] with the requirements of 28 U.S.C. § 1746." Order Granting Mot. Summ. J. at 6 (Jun. 27, 2008). However, the Court considered it fatal that the plaintiff had failed to present this evidence to the magistrate judge who originally filed the report and recommendation on the motion for summary judgment. The Court determined that the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, although requiring *de novo* review in the

district court, "d[id] not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Id.* at 7 (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). Therefore, the Court found that the Coxton affidavit could not be considered. *Ibid.*

This Court also discussed the unsettled nature of the law in this Circuit on the issue of temporal proximity, noting that some cases have found that proof of a short time between the protected activity and the retaliatory act to be sufficient circumstantial evidence of causation if the adverse event was "acutely near in time," *DiCarlo*, 358 F.3d at 421-22, while others have determined that temporal proximity is insufficient to establish causation without "other compelling evidence," *Imwalle v. Reliance Med. Prods., Inc.* 515 F.3d 531, 550 (6th Cir. 2008) (internal quotation omitted). Nonetheless, the Court found that "the necessary level of proximity does not exist in this case," because the alleged retaliatory act occurred fifteen months after the plaintiff filed his lawsuits, which was not "sufficiently close in time to the protected activity to give rise to an inference of causation." Order Granting Mot. Summ. J., at 8-9 (June 27, 2008). Therefore, the Court again granted the motion for summary judgment.

Not surprisingly, the plaintiff appealed that decision to the Sixth Circuit. The court of appeals vacated and remanded, first finding that the Magistrate Judge Act, 28 U.S.C. § 636(b)(1)(C), "grants district courts the discretion to 'accept, reject, or modify, in whole or in part' the findings or recommendations of the magistrate judge and to 'receive further evidence or recommit the matter to the magistrate judge with instructions." *Muhammad v. Close*, No. 08-1944, slip op. (6th Cir. Apr. 20, 2009). Sixth Circuit Order, Apr. 20, 2009. The Sixth Circuit determined that this Court did not actually exercise its discretion under the Magistrate Judge Act and relied on cases that were not

directly on point because they involved new legal claims, rather than new evidence. The court of appeals directed this Court to consider *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000), and *Freeman v. Bexar*, 142 F.3d 848, 850-53 (5th Cir. 1998), which acknowledge that district courts have discretion to consider evidence first presented in objections to a magistrate judge's report. In addition, the Sixth Circuit also found problematic the fact that "[t]he district court's order does not indicate that the court considered Muhammad's period of absence" from SMT between the filing of his second lawsuit and the allegedly adverse action. For these reasons, the Sixth Circuit vacated the June 27, 2008 order granting summary judgment and remanded the case to this Court again on April 20, 2009.

On remand, the Court appointed *pro bono* counsel for the plaintiff and ordered the parties to file supplemental briefs on the issues identified by the court of appeals. The defendant expressed a desire to raise a qualified immunity defense in these later stages of the case, so the Court directed that the supplemental briefs address the merits of that argument and whether the argument was timely at the summary judgment stage. The Court heard oral arguments on the motion for summary judgment on December 15, 2009.

## II. Discussion

The standards for evaluating a motion for summary judgment are well known but bear repeating here. As the Sixth Circuit recently explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial

> burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).

A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. However, "[t]he submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial." *Alexander*, 576 F.3d at 558 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.")). Rather, "the party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Ibid.* If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

When "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . . Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In

evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Ref., LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

The issue again before the Court on summary judgment is whether a question of fact exists on the causation element of the plaintiff's retaliation claim. To decide this issue, the Court must determine (1) whether it should consider the affidavit of Bruce Coxton ("Coxton affidavit"); (2) whether the plaintiff has presented sufficient evidence of causation, with or without the affidavit; and (3) whether the defendant may raise a qualified immunity defense at this summary judge stage, and if so whether that defense has merit. The Court will address these issues in turn.

### A. The Coxton affidavit

Plaintiff's counsel asserted at oral argument that the Sixth Circuit considered the affidavit to be a key piece of evidence and seemed to support the practice of considering later-submitted evidence in this situation. Based on the court of appeals's opinion, the defendant conceded that this Court should consider the affidavit as part of the record. That affidavit reads as follows:

> I, Bruce Coxton, being first duly sworn deposes and says that the following statements are true and correct to the best of my knowledge, information, and belief:
> 1.) In or around May 1997, I did hear two correction officers having a discussion about prisoner Mease-X [the plaintiff] and they were clearly conspiring to cause him harm.
> 2.) I directly saw and heard officers M. Close and M. Glowicki standing approximately 3 feet from my cell door talking about how they were going to "get Mease-X ass."
> 3.) I directly observed Close and Glowicki talking about how they had to "stop him from filing that appeal and get his ass out of here." Glowicki responded to Close that "I should have killed the nigger when I had the chance."
> 4.) I directly watched and overheard Close telling Glowicki how to set Mease-X up by placing a knife in his cell and than [sic] rush him and act like he accidently got killed while trying to resist them.
> 5.) I wrote a kite to the unit case manager Wendy Reetz and told her what I had seen and heard regarding the officers threat to kill Mease-X.

> 6.) Case manager Reetz came to my cell and told me that if I did not minded [sic] my own business, I would be getting the same treatment.
> 7.) Subsequently, when I tried to access the Court of Appeals with my criminal case, Reetz withheld my pleadings beyond the time for which relief could be sought and denied me access to postage stating "that I should have minded my own business.["]
> 8.) I was also retaliated against for reporting this matter to Reetz and this could have seriosly [sic] harmed Mease-X, maybe even his death as Close and Glowicki threatened.
> 9.) I attest that the foregoing is true and correct to the best of my knowledge, and make these statements under penalty of perjury.

Pl.'s Obj. to R & R Ex. G, Coxton Aff.

The Magistrate Judge Act, 28 U.S.C. § 636 *et seq.*, requires a reviewing district court judge to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

The circuits currently are split on whether a district court is obligated to consider additional evidence presented after the magistrate judge has issued his or her report and recommendation. As the court of appeals noted, this Circuit has not directly considered this issue, although it has looked unfavorably on parties who raise new issues and arguments after the magistrate judge has issued a report to the district judge. *See Muhammad v. Close*, No. 08-1944, slip. op. (6th Cir. Apr. 20, 2009); *see also Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Other circuits have found that the statute permits a district court to accept and consider additional evidence on its *de novo* review. Addressing an analogous issue, the Second Circuit found that prior versions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) authorized district courts to accept supplemental evidence. *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (citing Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3070.2, at 378). The First, Fifth, and Ninth Circuits align

with the Second Circuit in permitting, but not requiring, a district court to consider evidence first filed with the party's objections. *See United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000); *Freeman v. County of Bexar*, 142 F.3d 848, 850-53 (5th Cir. 1998); *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988); *see also Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) ("[G]iven the circumstances under which this evidence was offered — a *pro se* plaintiff, ignorant of the law, offering crucial facts as soon as he understood what was necessary to prevent summary judgment against him — it would have been an abuse of discretion for the district court not to consider the evidence."). The Fourth Circuit has gone a step further to require a reviewing district court to consider such evidence. *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) ("The district court cannot artificially limit the scope of its review by resort to ordinary prudential rules, such as waiver, provided that proper objection to the magistrate's proposed finding or conclusion has been made and the appellant's right to *de novo* review by the district court thereby established.").

This Court concludes that the Sixth Circuit's reference to *Howell* and *Freeman* in its recent opinion in this case signals its alignment with the First, Second, Fifth, and Ninth Circuits on this issue. The Court concludes, therefore, that district courts have discretion to consider evidence first presented after a magistrate judge files a report, provided the evidence is furnished by the time objections to the report and recommendation are due. Because the defendant concedes that the Court should consider the Coxton affidavit, the affidavit was submitted with the plaintiff's timely objections to the magistrate judge's report and recommendation, and there is no evidence that the delay in furnishing the affidavit was an abuse of the process, the Court believes it is appropriate to consider this affidavit when deciding the motion for summary judgment.

B. Causation

As proof of causation, the plaintiff points to the fact the he was absent from SMT between filing his second lawsuit and the alleged adverse action. The plaintiff asserts, and the defendant does not dispute, that the analysis of the temporal lapse between the protected act and the alleged retaliation should focus on the time period when Close had the opportunity to retaliate, that is, when he had access to the plaintiff, which was approximately four months. For one of those months, the plaintiff says that he was housed in a "transition unit," and for two of the remaining three, he was in administrative segregation. According to the plaintiff's chronology, Close had access to the plaintiff only for a single month. The plaintiff also posits that his litigation was still quite active because he had filed an appeal that was not resolved until 1998. According to the plaintiff, the appeal and the alleged retaliatory act occurred simultaneously.

Moreover, the Coxton affidavit provides substantial evidence of causation. As noted earlier, Coxton writes that he overheard corrections officers M. Close and M. Glowicki discuss "how they were going to 'get Mease-X ass.' . . . [and] 'stop him from filing that appeal and get his ass out of here.'" Pl.'s Supp. Br., Ex. A, ¶¶ 2-3. The defendant argues that the affidavit provides little support for the plaintiff's claim because it discusses an entirely unrelated event. But viewing the facts in the light most favorable to the plaintiff, the affidavit can be seen as direct evidence of causation. The reference to an appeal by prisoner Mease, the plaintiff's given surname, could be interpreted as a discussion of the plaintiff's pending appeal and how the guards could stop the case from proceeding further. According to the affidavit, the conversation occurred before the misconduct charge. The Court does not weigh the credibility of the affiant on summary judgment. It is plain to the Court,

however, that if take as true, a reasonable juror could find that Coxton's evidence establishes causation.

Moreover, period of time between the lawsuit filing and the incident in which the two men had contact — between one and four months — and the fact that the offending event occurred during one of the first interactions between the two men during that time, supports an inference of causation. Coupled with the Coxton affidavit, the plaintiff's evidence is sufficient to withstand summary judgment on the issue of causation.

## C. Qualified immunity

The defendant first raised the issue of qualified immunity in its supplemental brief in this Court after the latest remand. In *English v. Dyke*, 23 F.3d 1086 (6th Cir. 1994), the Sixth Circuit held that the failure to raise qualified immunity in one stage of the litigation can amount to a waiver of that defense, but only for that stage; the defendant may raise the qualified immunity issue again at a later stage in the proceedings. *Id.* at 1090. The defendant relies on that holding in its argument that the parties are at a new stage in the litigation. However, despite the passage of considerable time and the trek through the nation's appellate courts, the case remains at the summary judgment stage: the Court continues to adjudicate the defendant's motion for summary judgment filed February 6, 2001 [dkt. #73]. The defendant's assertion of qualified immunity as a ground for summary judgment comes too late.

Moreover, the facts, especially in light of the Coxton affidavit, dispel any notion of qualified immunity. At the summary judgment stage, "a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 722-23 (6th

Cir. 2011) (quoting *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002)). Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of this defense is to strike a balance that "accommodates the tension between permitting litigants to recover damages, which is often the only realistic avenue for vindication of constitutional guarantees, and the social costs of such suits, including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (internal quotation marks and citation omitted). The defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Close's conduct, as depicted by the Coxton affidavit, falls far to the wrong side of that line of demarcation.

A prisoner's right to file lawsuits and access the courts is a well-established and long-standing constitutional right. *See, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). Similarly, the prohibition against retaliating against prisoners for exercising their constitutional right of access to the courts is equally well established and predates the conduct alleged in the complaint. *See, e.g.*, *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993); *Newsome v. Norris*, 888 F.2d 371, 376-77 (6th Cir. 1989); *see also Scott v. Churchill*, 377 F.3d 565 (6th Cir. 2004) (discussing a case similar to the present one and the well-settled nature of the prohibition against retaliation); *Bell v. Johnson*, 308 F.3d 594, 612 (6th Cir. 2002) (same). The ineluctable conclusion is that a reasonable officer in the defendant's position would have been on notice that an adverse action such as alleged here would

have violated the plaintiff's clearly-established First Amendment rights. The qualified immunity defense does not support the defendant's motion for summary judgment.

### IV. Conclusion

This Court believes that it ought to consider the Coxton affidavit as part of the plaintiff's submission in opposition to the defendant's motion for summary judgment. That affidavit plus the other evidence in the record establish a material fact issue on the elements of the plaintiff's First Amendment retaliation claim. In addition, the defendant's claim of qualified immunity comes too late at this stage of the litigation, and the record does not support it.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt #73] is **DENIED**.

It is further **ORDERED** that counsel for the parties appear before the Court on August 1, 2011 at 11:30 a.m. to discuss further case management deadlines and schedule the matter for trial.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 8, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 8, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL